# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LAURA L. HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-14-223-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Laura L. Hill requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on February 23, 1977, and was thirty-four years old at the time of the most recent administrative hearing (Tr. 83, 308). She has a twelfth grade education and has worked as a warehouse inspector (Tr. 297). The claimant alleges that she has been unable to work since August 1, 2001 due to a dislocated collarbone, pain in her hips, and depression (Tr. 108).

## Procedural History

On October 31, 2007, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Ralph L. Wampler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 4, 2009 (Tr. 37-44). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-09-395-SPS, and remanded the case to the ALJ with instructions to properly evaluate the claimant's credibility regarding pain (Tr. 339-347). ALJ Ralph L. Wampler held a second administration hearing and again determined that the claimant was not disabled in a written opinion dated December 7, 2011 (Tr. 290-299). The Appeals Council again denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) "to perform sedentary work as defined in 20 C.F.R. § 416.1967(a) except that requiring [sic] more than occasional stooping, repetitive work [sic] head [sic] work with non-dominant left upper extremity, and concentrated exposure to environments containing fumes, odors, dusts, gases, poor ventilation, and etc." (Tr. 294). The ALJ concluded that although the claimant could not return to her past relevant work, she was not disabled under Rule 201.28 of the Medical-Vocational Guidelines, *i. e.*, "the grids" (Tr. 298).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess her RFC, (ii) by using the Grids as a framework for his decision making without consulting a vocational expert, and (iii) by improperly analyzing her credibility. The undersigned Magistrate Judge agrees with the claimant's first and second contentions, and therefore finds that the Commissioner's decision should be reversed and remanded for further proceedings.

On remand, the ALJ found the claimant had the severe impairments of chronic back pain and stiffness in her lower back and hips with numbness in her left leg secondary to degenerative disc disease of her lumbar spinal region status post March 2003 interbody fusion, chronic pain and stiffness in her left neck/shoulder secondary to A.C. separation of left shoulder not treated by surgery, and asthma (respiratory reactive disease) (Tr. 294).

The medical evidence reveals that the claimant presented to the Pain Management Center on March 26, 2003 with complaints of lower back pain which was radiating into her left leg (Tr. 171). At that time, the claimant was preparing to undergo surgery on her lumbar spine which was injured in August 2002 when one of her children ran over her while she was working underneath her car (Tr. 171). The operating notes from her March 28, 2003 surgery reveal that claimant's diagnoses included acquired spondylolisthesis at L5-S1 and left L5 radiculopathy (Tr. 179). The procedures performed during surgery included L5 laminectomy, discectomy, facetectomy, and foraminotomy; L4 laminectomy; posterior lumbar interbody fusion at L5-S1; placement of Brantigan cage at L5-S1; an intertransverse arthrodesis at L4-S1; and placement of screws and rods at L4-S1 (Tr. 179).

On December 12, 2007, Dr. Shahnawaz Khan examined the claimant and found she had reduced range of motion in her back, hips, and left shoulder, most notably in back flexion, hip flexion, and hip rotation (Tr. 193-94). He noted the claimant had no difficulty mounting or dismounting the exam table, but that she mentioned pain when doing so (Tr. 191). The claimant reported pain in attempting to flex, extend and bend her lower back, and Dr. Khan noted tenderness and muscle spasms in both the lumbosacral spine and cervical spine (Tr. 196).

The claimant began seeing Dr. Dayne Piercefield at the Wewoka Indian Health Center in June 2008. She reported at her initial visit that her back pain had begun to radiate down her left arm and leg, causing weakness and numbness in her left arm (Tr. 220). Dr. Piercefield noted "[t]ender points and areas of obvious muscle spasm across

[the] shoulder girdle and low back," stiff hips and shoulders, and limited range of motion due to pain and muscle spasms (Tr. 221). He prescribed pain medications and ordered x-rays of the claimant's cervical and lumbar spine and left shoulder, which showed no new findings (Tr. 221-22, 231). In July 2008, the claimant presented with the same complaints of pain, and Dr. Piercefield made an adjustment to her pain medications and referred her for physical therapy (Tr. 232-33). In September 2008, after completing physical therapy, the claimant again presented to Dr. Piercefield who noted debilitating back pain despite months of conservative treatment, refilled her medications, and opined that she may have cord or nerve root impingement (Tr. 261-64). At an examination on November 3, 2008, Dr. Piercefield found the claimant's low back muscles were slightly tender and that she had some pain down her right leg, but noted the pain medications were helping and that her functional status had improved (Tr. 264-65). He also refilled her medications (Tr. 266). In January 2009, Dr. Piercefield noted the claimant was "doing fairly well" on her current pain medications and he refilled them (Tr. 268-270). The claimant had similar appointments in March, May, and August 2009 (Tr. 473-75, 469-72, 465-69). There is no record of any appointments at Wewoka Indian Health Center between September 2009 and May 2010. In June 2010, the claimant sought treatment for a condition unrelated to her disability claim, but was also prescribed pain medications for neck and shoulder pain (Tr. 462-64). On December 20, 2010 the claimant presented with increased back and shoulder pain (Tr. 456-58). Her pain medications were refilled and she was referred to an orthopedic surgeon (Tr. 458). From January 2011 through July 2011, the claimant sought treatment at Wewoka Indian Health

Center twelve times for concerns largely unrelated to her disability claim (Tr. 425-55). Although not her chief complaint, the claimant did complain of back pain on four occasions during this time period and she received pain medication refills three times (Tr. 427, 435, 436, 445, 448, 450, 452).

Dr. Radhakrishna Kamath evaluated the claimant's left shoulder on March 22, 2011 (Tr. 445-46). His exam revealed she had prominence of the outer end of the clavicle secondary to acromioclavicular separation, minimal tenderness over the acromioclavicular joint, full mobility of the left shoulder with mild pain, and no signs of impingement (Tr. 446). He ordered an MRI of her left shoulder that revealed an injury to the acromioclavicular joint, but was otherwise normal (Tr. 446, 428). He diagnosed her with acromioclavicular separation (type 2 chronic) and recommended symptomatic treatment by continuing her pain medications (Tr. 428).

State reviewing physician Dr. Judy Marks-Snelling completed a Physical Residual Capacity Assessment on January 19, 2008 where she opined that the claimant was capable of medium work, *i. e.*, she could lift fifty pounds occasionally, twenty-five pounds frequently, and could sit/stand/walk for about six hours in an eight hour workday with unlimited pushing and pulling, but only occasional stooping (Tr. 211-218).

State reviewing physician Dr. Luther Woodcock also completed a Physical Residual Capacity Assessment on July 9, 2008 where he opined that the claimant was capable of light work, *i. e.*, she could lift twenty pounds occasionally, ten pounds frequently, and could sit/stand/walk for about six hours in an eight hour workday with unlimited pushing and pulling, but only occasional stooping (Tr. 248-255).

At the most recent administrative hearing, the claimant testified she experiences pain her in lower back that radiates to her toes in her right leg and to her knees in her left leg (Tr. 310-11). She stated the pain in her right leg is constant unless she is lying down but the pain in her left leg mostly occurs at night (Tr. 311). She also testified that she has muscle spasms in her right hamstring three or four times per week (Tr. 312-13). As to her left shoulder pain, she stated it is intermittent, radiates to her fingertips, and causes stiffness in her neck (Tr. 313-14). She further testified she takes more pain medication per dose than she is prescribed and that these medications help "just a little bit" (Tr. 316). With regard to specific limitations, she testified she could sit upright for twenty minutes before needing to lie down, could stand for thirty minutes before needing to lean on something, could walk two blocks at her own pace, could neither bend at the waist nor squat without assistance, and that she could not raise her left arm past her chest (Tr. 314, 321-22). As to her daily activities, she testified that she lies down and watches television for most of her day, her husband cooks for the family, her husband and children do the cleaning, and her children assist with her personal needs such as putting on her socks and shoes, and showering (Tr. 323-25).

In his written opinion, the ALJ discussed the medical evidence, and as directed on remand, analyzed the claimant's credibility. He found the claimant's subjective complaints not credible by stating the applicable credibility factors and citing specific evidence supporting his conclusion, including, *inter alia*, a five-year lapse in treatment after surgery; effectiveness of her medications and physical therapy; decrease in the extent that her medical care was focused on her spinal health; repeat physical

examinations showing good physiological functions; a lack of functional limitations assessed by any treating physicians; and the opinions of the state agency reviewing physicians (Tr. 295-97). The ALJ then found the claimant not disabled according to the grids, citing to Soc. Sec. Rulings 83-14, 85-15, 96-9p, 83-10, and 83-12 in support of his finding that the claimant's non-exertional limitations "have little or no effect on the occupational base of unskilled sedentary work" (Tr. 298).

The claimant asserts that the ALJ erred in assessing her RFC and this Court agrees. Despite finding that the claimant suffered from severe pain-inducing impairments, the ALJ *failed to evaluate or even mention* the effect of these pain-inducing impairments upon the claimant's RFC. "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Because there was objective evidence that the claimant has pain-producing impairments, *i. e.*, degenerative disc disease and A.C. separation of the left shoulder, the ALJ was thus

required to consider the claimant's allegations of pain and the extent to which they were disabling. Here, the ALJ conducted a credibility analysis but failed to assess the claimant's level of pain (disabling or otherwise) in formulating his RFC and determining what work, if any, she can perform with her level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) [unpublished table opinion] ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert, however, the ALJ did not question a vocational expert at the administrative hearing. *See, e. g., id.* ("A vocational expert is ordinarily required to determine what limitation a claimant's chest pain might have on his ability to do light and sedentary work." [citation omitted].

Finally, the ALJ's step four errors were compounded when he applied Rule 201.28 of the grids to conclude that the plaintiff was not disabled. The ALJ's application of the grids cannot be reconciled with his determination at step two of the sequential analysis that the claimant had severe nonexertional impairments which, by definition, significantly limit her ability to perform basic work activities. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) ("An impairment is severe . . . if it significantly limits a claimant's physical or mental ability to perform basic work activities.") [citation omitted]. Such a finding at step two "makes it impossible to conclude at step four that her pain was insignificant, and [the ALJ] therefore erred by relying conclusively on the grids." *Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) [unpublished opinion]; *see also*

*Duncan v. Apfel*, 156 F.3d 1243, 1998 WL 544353, at \*2 (10th Cir. 1998) [unpublished table opinion] ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Furthermore, because the ALJ failed to account for the claimant's pain in formulating her RFC at step four of the sequential analysis, it was error for him to apply the grids at step five. *See Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004) (noting that when the ALJ does not properly evaluate the claimant's impairments at step four, it is error for him to apply the grids at step five).

Because the ALJ failed to properly assess the claimant's level of pain in forming her RFC and then improperly relied on the grids, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**